IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

| | | |
|---|---|---|
| PACIFIC LIFE INSURANCE CO. | * | |
| Plaintiff | * | |
| v. | * | Civil Case No. 8:21-cv-00737-PJM |
| WELLS FARGO BANK, NA, | * | |
| Defendant | * | |

**MEMORANDUM OPINION**

This is a case concerning the alleged illegal generation of a life insurance policy. Pending before the Court is Plaintiff Pacific Life Insurance Company's Motion to Compel the production of documents from Third-Parties Coventry Capital I LLC and Coventry First LLC (hereinafter collectively "Coventry"). ECF No. 70. Since the filing of the Motion to Compel, Coventry has produced multiple categories of documents which resolve several of the issues in Plaintiff's Motion. Nonetheless, Plaintiff has identified a few discrete categories of information which are relevant to the case, and whose production – based on the information before the Court – would not be unduly burdensome. Thus, if Coventry has not yet produced them, they should be produced. For these reasons and the additional reasons discussed below, Plaintiff's Motion to Compel is granted, in part, and denied, in part.

**BACKGROUND**

According to Plaintiff's Complaint, "[i]n the early 2000s, institutional investors began pooling large blocks of high-value life insurance policies into special purpose vehicles, such as tax-exempt entities or trusts, the interests of which were securitized and sold to other investors." ECF No. 1, at 2. These investors were particularly interested in vehicles which included high

1

numbers of policies insuring senior citizens. *Id*. at 2-3. However, there were only a limited number of senior citizens who did not want their life insurance policies and thus were willing to sell them. *Id*. at 3. Investors allegedly responded to this situation by generating new policies on senior citizens paid for by third parties, and whose benefits would be paid to individuals and entities that did not have an "insurable interest in the insureds." *Id*. at 3-4. These "schemes violate insurable interest laws and the public policy against wagering on human life, [and] these schemes victimize the seniors who are induced to permit entities . . . to procure, or cause to be procured, policies on their lives." *Id.* at 4.

Coventry allegedly facilitated such a scheme by working with a nationwide network of insurance producers to "identify[] senior citizens meeting the funders' investment criteria and influencing those seniors to become involved in the . . . transactions the funders were orchestrating." *Id.* at 3. Although such schemes can take multiple forms, Plaintiff alleges that Coventry employed a "two-year, non-recourse premium finance scheme". *Id.* at 5. Under this scheme, a trust is typically created in the insured's name and a relatively high interest loan is charged to the insured. *Id.* When the insured is unable to repay the loan under its allegedly onerous conditions, the insurance policy – which is collateral for the loan – is transferred to the lender. *Id.* at 6. According to Plaintiff's Complaint, "Coventry has been investigated by state insurance commissioners, which have made findings in connection with Coventry's alleged fraudulent activities in the business of life insurance." *Id.* at 8.

This case arises out of Coventry's generation of one such insurance policy. In late 2005, Howard Kaye, an independent insurance producer, generated a $10,000,000 life insurance policy on the life of Alan Schwartzberg "not for Mr. Schwartzberg or his family or for a legitimate insurance purpose – but rather for Coventry itself." *Id.* at 8-9. On or about October 27, 2005,

Coventry, by way of Mr. Kaye, submitted to Plaintiff Pacific Life an application for the policy for Mr. Schwartzberg (hereinafter "the Policy"). *Id.* at 9. Plaintiff, in response, based on the representations in the application, issued a policy covering Mr. Schwartzberg. *Id.* at 10. However, Mr. Schwartzberg did not relinquish the policy to Coventry and instead, upon the advice of Mr. Kaye, repaid the loan so that he could then sell the policy to another buyer who would allegedly have been willing to pay an even greater amount. *Id.* at 11. When this second buyer never emerged, Mr. Schwartzberg allegedly was left with no choice but to re-sell the policy to Coventry for approximately $400,000 less than the amount he had paid shortly before. *Id.* As part of this re-sale, Mr. Schwartzberg requested that the beneficiary of the policy be changed from his family to Defendant Wells Fargo Bank, whom Plaintiff alleges was serving as an intermediary for Coventry. *Id.* at 12. Coventry acquired the Policy and then sold it at a profit to another insurance company. *Id.* According to Plaintiff, Mr. Schwartzberg's policy was just one of over 7,000 that were generated in a similar way. *Id.* at 13. The total value of these policies exceeded twenty billion dollars. *Id.*

On or around January 18, 2021, Mr. Schwartzberg passed away. *Id.* At that time, Plaintiff allegedly became aware of the circumstances surrounding the generation of the Policy. *Id.* Accordingly, on March 23, 2021, Plaintiff filed suit in this Court seeking a declaratory judgment that the policy at issue was void as a matter of law because it constituted an "illegal human life wagering contract," *id.* at 14, and lacked an insurable interest in violation of the Delaware Constitution and Delaware state law. *Id.* at 15.

As part of discovery in the case, on September 23, 2022, Plaintiff filed the pending Motion to Compel certain categories of documents which it alleged Coventry had failed to produce in full.

ECF No. 70.  On October 28, 2022, this case was referred to my chambers for discovery and related scheduling.  ECF No. 78.

## LEGAL STANDARD

Regardless of whether the Court considers Plaintiff's Motion under Rule 45 or Rule 26, the Court must begin by reviewing Plaintiff's subpoena under the relevancy standards set forth in Rule 26(b).  *Crete Carrier Corp. v. Sullivan and Sons, Inc.*, No. ELH-21-0328, 2022 WL 1203652, at *15 (D. Md. Apr. 21, 2022).  Pursuant to Fed. R. Civ. P. 26(b)(1):

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within this scope of discovery need not be admissible in evidence to be discoverable.

However, a subpoena to a third party which "requires disclosure of privileged or other protected matter" or "subjects a person to undue burden," must be quashed or modified.  Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv).  As explained in *Maxtena, Inc. v. Marks*, 289 F.R.D. 427, 439 (D. Md. 2012), "[w]hether a subpoena subjects a witness to undue burden within the meaning of Rule 45[(d)](3)(A)(iv) usually raises a question of the reasonableness of the subpoena," an analysis that requires "weighing a subpoena's benefits and burdens" and "consider[ing] whether the information is necessary and whether it is available from any other source."  (citing 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2463.1 (3d ed. 2008)).  This inquiry is "highly case specific" and involves "an exercise of judicial discretion."  *Id.*  "The burden of proving that a subpoena is oppressive is on the [responding party]."  *Fleet Bus. Credit, LLC v.*

4

*Solarcom, LLC*, No. Civ. AMD 05-901, 2005 WL 1025799, at *1 (D. Md. May 2, 2005) (internal quotation marks omitted).

## ANALYSIS

As noted above, since the filing of the pending Motion, Coventry has produced several categories of documents which Plaintiff's Motion demands.[1]  Nonetheless, there remain a limited number of discrete categories of documents which are directly relevant to the litigation, and whose production Coventry has not shown would be unduly burdensome.[2]  Plaintiff specifically argues that Coventry has failed to produce all relevant, non-burdensome 1) transaction documents relevant to the Schwartzberg policy; 2) communications, including electronic mail, related to the Schwartzberg policy; and 3) documents governing the larger program pursuant to which the Schwartzberg policy was created.  ECF No. 70, at 10.  I address each of these categories in turn below.[3]

---

[1] Coventry initially objected to the subpoena on the grounds that they were tainted by a conflict of interest, but has since abandoned that objection. *See* ECF No. 75-6, at 2 ("After discussions with you concerning your representations about the ways in which the subpoenas in this matter differ from those subject to my clients' conflict objections, my clients agreed to drop their conflict objection as to these subpoenas[.]").

[2] Given the Court's acceptance of some of each party's argument, I find that neither party's position lacks a sufficient basis such that the awarding of costs and fees is appropriate to either party.  *See Hare v. Comcast Cable Communications Management, LLC*, 564 Fed.Appx. 23, 24 (4th Cir. 2014) ("Rule 37(a)(5)(B) provides for an award of expenses if a motion to compel discovery is denied, unless the motion was substantially justified or other circumstances make an award of expenses unjust." (internal quotation marks omitted)).

[3] Coventry disputes whether the parties have sufficiently met and conferred on each of these issues. ECF No. 75, at 9.  The parties have met and conferred to some extent on each of the general areas of dispute.  *See e.g.* ECF No. 75-6, at 3 (noting the areas of dispute between the parties); *see also generally* ECF Nos. 76-2 and 76-3.  While the Court agrees that further discussion may have been useful before Plaintiff filed its Motion to Compel, the Court will address the substantive issues between the parties so as to not further prolong the litigation.

I. **Transaction Documents Related to the Policy**

The parties do not dispute that Plaintiff is entitled to documents concerning the transaction that generated the Policy. Accordingly, Coventry has produced the final purchase agreement for the Policy, the Policy, the loan application, documents concerning medical underwriting related to the Policy, and servicing documents for the Policy. ECF No. 75, at 11. As Coventry notes, supported by a declaration from Coventry First LLC's Senior Vice President and General Counsel, these are the same types of documents Coventry has produced in response to similar requests in cases raising similar claims. ECF No. 75-1, at 2-3.

Plaintiff, however, has additionally identified several other types of documents that may be relevant, namely documents related to commissions paid for the Policy, documents related to Mr. Schwartzberg's suitability for the policy, and documents related to compensation received in connection with procurement of the Policy. ECF No. 70, at 16; *see also* ECF No. 70-1, at 8-9 (listing subpoena requests 5, 9, and 17). Each of these documents are relevant to the case in that they concern motivations related to the generation of the Policy. Additionally, documents related to the dates on which premiums were paid, the source of funding for such payments, whether any payments were in fact made to any of Mr. Schwartzberg's family members, and any premium finance loans related to the Policy are relevant to the extent that they indicate whether there was a legitimate insurable interest in the case, or whether, based on who was making what payments and whether any benefits were in fact paid, the Policy was a means to generate a financial instrument that could later be sold to a third party. ECF No. 70, at 17; *see also* ECF No. 70-1, at 9-10 (listing subpoena requests 14-16, 18-19, 20, and 34). Coventry has an obligation to respond to these requests if it has responsive documents, subject to the Court's guidance below. Merely because Coventry has made narrower productions in other similar cases does not automatically determine

6

that it has complied with the Federal Rules of Civil Procedure here, given the allegations in this particular case and the particular requests at issue. *See National Labor Relations Board v. 710 Long Ridge Operating Co. II, LLC*, No. 14-1725, 2020 WL 3026523, at *2 (D.N.J. Jun. 5, 2020) ("Assuming relevance, proportionality is a case-by-case determination subject to the Court's broad discretion."). In responding to the identified requests, Coventry shall not only conduct searches using Mr. Schwartzberg's name, but also the relevant policy numbers and internal identification numbers associated with the Policy.

It is possible that the production of materials beyond those Coventry has already produced may impose some burden, given the effort needed to locate and or review the relevant documents, but Coventry has made no such argument in their Opposition.[4] Rather, Coventry has only argued that Plaintiff has failed to identify any specific documents it failed to produce. ECF No. 75, at 11. In making this argument, Coventry incorrectly characterizes Plaintiff's burden on a motion to compel. A moving party need not identify particular documents to prevail, but only identify relevant categories of documents it has requested which the party receiving the request has, without justification, failed to produce. *See Paoli v. Stetser*, No. 12–66–GMS–CJB, 2013 WL 2154393, at *8 (D. Del. May 16, 2013) (explaining that to prevail on a Motion to Compel, the moving party must identify the specific requests that the non-moving party has failed to respond to); *Brown v. Camp Hill*, No. 3:CV-10-2612, 2017 WL 3868501, at *1 (M.D. Pa. Sep. 5, 2017) ("In the event

---

[4] In their Response to Plaintiff's Subpoena, Coventry generally objected to the Subpoena as a whole on the grounds that the documents requested are more than eighteen years old. ECF No. 70-3, at 5. This general assertion of burden regarding all documents requested is insufficient to defeat a Motion to Compel. *See Alston v. Equifax Information Services, LLC*, No. TDC–13–1230, 2015 WL 1807952, at *2 (D. Md. Apr. 17, 2015) ("When a party objects to a discovery request, conclusory assertions of burden or cost are insufficient. Instead, a party claiming that a discovery request is unduly burdensome must allege specific facts that indicate the nature and extent of the burden, usually by affidavits or other reliable evidence.") (internal citations and quotation marks omitted).

Plaintiff seeks to file a properly supported motion to compel, he is cautioned that he must identify the perceived deficiencies of each discovery request to which he seeks the Court to compel Defendants' response or supplemental response."). The standard, as Coventry characterizes it, would be contrary to the rules of discovery in that it would require the requesting party to foretell which specific documents it should receive without having knowledge of what documents exist. To the extent that Coventry has concerns that the requests above are vague, it shall identify for Plaintiff categories of documents which are responsive, and the parties shall then meet and confer as to which of those categories are relevant to the case and non-burdensome to produce.

Once the parties have met and conferred, Coventry should either produce the documents requested, affirm that it has already produced all documents responsive to the requests or confirm that it has no documents responsive to these requests.

## II.     Communications Related to the Policy

Second, Plaintiff seeks communications related to the Schwartzberg policy. Again, Coventry does not dispute that Plaintiff is entitled to at least some communications. As noted in their Opposition, Coventry searched for electronic mail including the term "Schwartzberg" and produced all emails found in response. ECF No. 75, at 12. Additionally, as Plaintiff requested in its Motion to Compel, ECF No. 70, at 12-13, Coventry conducted searches for communications including the Policy number and the internal identification numbers associated with the Policy, but the searches did not uncover any additional documents that had not been previously produced.[5] ECF No. 75, at 16. Coventry likewise conducted searches for communications including only the

---

[5] In its Reply, Plaintiff additionally discusses case notes referencing "Policy 100554". ECF No. 76, at 5. Plaintiff presumes the number refers to the Policy. *Id.* The parties shall meet and confer as to the relevance of the number as to the Policy and whether it is separate and apart from the identification numbers that Coventry has already used to conduct searches.

terms "Kaye", "Pacific Life", and "AIG" even though such a search was not explicitly requested in Plaintiff's Motion.[6] *Id.* at 13-14. A review of the emails with only "Kaye" in them, though somewhat burdensome, did not reveal any additional emails relevant to the case that had not already been produced. *Id.* at 13. Finally, in addition to these specific communications, Coventry has produced at least some notes from their internal case tracker system. *See* ECF No. 75-1, at 3 ("The Coventry Entities have also produced to Plaintiff the complete and unredacted set of case tracker notes concerning the Schwartzberg policy and transaction.").

In Plaintiff's Reply Brief, it takes issue with the scope of the communication log, alleging that the log, as produced, dates back to only 2007, two years after the Schwartzberg policy was generated. ECF No. 76, at 6. If true, the argument is well taken. Communications related to the Policy that occurred on or around the day when the Policy was generated are relevant to the case. To the extent that the log produced does not extend back to 2005,[7] Coventry shall produce a log of communications for the two additional years or confirm that the information is not available.

Finally, Plaintiff argues that Coventry has failed to produce the underlying emails referenced in the case tracker log, and that they have failed to produce any emails from between 2005 and 2008. *Id.* Coventry, in contrast, has presented a declaration affirming that it has produced at least three emails from that time period. ECF No. 75-1, at 3. Without either the log to which Plaintiff refers or the emails to which Coventry cites, the Court has an insufficient basis to assess the validity of each party's respective arguments. To the extent that Plaintiff continues

---

[6] The Court understands that Plaintiff had made such a request as part of the parties' meet and confer communications. ECF No. 76-3, at 9.

[7] Whether the case tracker notes that have been produced to Plaintiff extend back to 2005 remains an open question given the fact that the log was not presented as an exhibit to the Court.

to demand underlying communications referenced in the case tracker log, Pacific shall file a copy of the log with the Court, identify which communications it believes it is entitled to, and its basis for believing it is entitled to each specific type or category of communication.[8]

### III. Documents Governing the Program Pursuant to Which the Policy Was Generated

Finally, Plaintiff moves to compel Coventry to produce several documents related to the program that resulted in the generation of the Policy. ECF No. 70, at 19. Plaintiff's requests as originally worded would encompass a large quantity of documents, some of which would have only minimal relevance to this particular case, which concerns the generation of one policy pertaining to one particular individual. *See e.g.* ECF No. 70-1, at 10 (requesting "[a]ny and all documents concerning and/or describing Your relationship with any Coventry entity as defined herein"); *id.* (requesting all marketing materials describing any Coventry program); *id.* (requesting any and all marketing and promotional materials related to "non-recourse premium financing, procuring life insurance for potential re-sale on the secondary market, life insurance capacity transactions, and/or any other non-traditional use of life insurance as an investment opportunity"). While some subset of these documents – for example, promotional materials used to market the Policy to Mr. Schwartzberg – may be sufficiently relevant and non-burdensome to produce, Plaintiff has failed to explain why the production of all such documents would be proportionate to the needs of this case. Accordingly, Plaintiff's request for all such documents shall be denied.

Plaintiff, however, has identified certain specific categories of documents which are relevant to this case and whose production would not be unduly burdensome. To the extent these

---

[8] In its Opening Brief, Plaintiff also highlights a ruling from the U.S. District Court for the Northern District of Illinois in *Sun Life Assurance Co. of Canada v. Wells Fargo Bank, N.A.*, No. 17 C 06588, 2020 WL 1503641 (N.D. Ill. Mar. 30, 2020). ECF No. 70, at 8. Coventry confirmed that it produced all such documents that it produced in that litigation. ECF No. 75-1, at 4.

documents have not already been produced, Coventry shall produce the actual loan documents forwarded to Mr. Schwartzberg along with Coventry Capital's September 26, 2005 letter, as well as any other documents concerning any "pre-offer" to Mr. Schwartzberg related to the Policy. ECF No. 76, at 7.

Additionally, Plaintiff demands several other categories of documents which it asserts were the basis for the U.S. District Court for the District of Delaware's decision in the *Estate of Berland v. Lavastone Capital LLC*, No. 1:18-CV-02002, 2022 WL 15023450 (D. Del. Sep. 28, 2022). *See* ECF No. 76, at 7 ("In uncovering and describing the program . . . , the *Estate of Berland* Court describes Coventry's integral role in every step of the process. For example, the decision describes how Coventry Capital . . . sent Berland a standard loan package." (internal quotation marks omitted)). However, Plaintiff's general assertions are not a sufficient basis to grant a Motion to Compel. As Plaintiff correctly notes, the Court in the *Estate of Berland* detailed the process by which Coventry and their partners marketed and generated a policy similar to that offered to Mr. Schwartzberg. ECF No. 76-4, at 2-5. However, the Court's decision, rather than citing documents Coventry produced, generally cites a statement of undisputed facts as the basis for its factual conclusions. *Id.* While it appears that some of the paragraphs cited in the statement were based on documents produced in discovery, 1:18-cv-2002, ECF No. 113, at ¶ 5, many others were based on testimony elicited through a deposition. *See e.g. id.* at ¶¶ 14-16, 19-20, 34. Other paragraphs are based on documents that the plaintiff in that case produced. *Id.* at ¶ 20. Coventry has already confirmed that they produced the same types of documents in this case as they did in the *Estate of Berland*. ECF No. 75, at 14. To the extent that Coventry is able to highlight with greater specificity those documents which were produced in the *Estate of Berland* but not produced here, or provide greater factual support for the conclusion that the Court's decision in that case was based on

documents Coventry produced in that case but did not produce here, the Court will allow Plaintiff to renew its Motion. However, for the time being, Plaintiff's request to produce additional documents similar to those produced in the *Estate of Berland* is denied without prejudice.

Likewise, Plaintiff also demands that Coventry produce five additional documents without having a basis to know whether they, in fact, exist or what their contents might be. ECF No. 76, at 4. In response to Plaintiff's subpoena, Coventry produced three documents numbered "1, 2, and 8" relating to the program pursuant to which Mr. Schwartzberg's policy was generated. ECF No. 76-1. On this basis, Coventry posits that documents "3 through 7" must exist and must be relevant to the case.[9] ECF No. 76, at 4. While such assumptions alone provide an insufficient basis to grant a Motion to Compel, they merit further discussions between the parties. Plaintiff shall meet and confer with Coventry as to why the documents were numbered as such.[10] Absent, for example, any reference in the documents produced to these additional documents or a deposition of the custodian responsible for gathering these documents, the Court has an insufficient basis to conclude that these documents are necessarily relevant to this case. However, if Coventry fails to respond to Plaintiff's inquiries promptly in a subsequent meet and confer, the Court may order their filing to determine their relevance.

---

[9] Although not the focus of Plaintiff's Motion to Compel, Plaintiff, in its discussions with Coventry, highlighted attachments to which one of these documents referred. *See* ECF No. 76-2, at 1 ("the document labeled '8. PFP Renewal – A & R Credit Agreement' references numerous exhibits to the agreement. However, these exhibits were not produced."). The Court agrees that attachments referenced in document must be produced.

[10] Plaintiff raised the matter with Coventry in a meet and confer, however it did so one week before filing the present Motion, ECF No. 76-3, at 3, and even then, raised this issue only in its Reply Brief. Both of these matters skew in favor of allowing the parties the opportunity to fully meet and confer before ordering the documents' production.

Finally, Plaintiff, in its Reply, argues that after it filed its Motion to Compel in this case, Third-Party Lavastone Capital LLC responded to a separate subpoena from Plaintiff. ECF No. 76, at 8. Among the documents Lavastone Capital produced was a document which listed all of the "program and form documents" Coventry used as part of the program which generated the Policy. *Id.* Without the document referenced, the Court cannot assess the relevancy of the documents discussed therein or whether they would be unduly burdensome to produce. To the extent that Plaintiff continues to seek such documents, it shall file the Lavastone Capital document referenced, identify those documents mentioned therein which Plaintiff believes Coventry is obligated to produce, but has not yet produced, and explain why they are relevant to the present case.

## CONCLUSION

For the reasons stated above, Plaintiff's Motion to Compel shall be granted, in part, and denied, in part.

So ordered.

Date:   April 24, 2023            _____/s/_____
                                  Ajmel A. Quereshi
                                  U.S. Magistrate Judge